UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ZHIGUANG YAO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DAIMLER TRUCKS NORTH AMERICA LLC, et al., <br><br> Defendants. | Case No. 3:21-CV-784-CCB-SJF |

## OPINION AND ORDER

Before the Court is a motion for judgment on the pleadings filed by Defendant Daimler Truck North America LLC ("DTNA"). [DE 158]. Plaintiffs in this action were passengers, or family members of passengers, in a tour bus designed, manufactured, and sold by Defendants. The bus overturned tragically killing some passengers and injuring the rest. Plaintiffs initiated this action in California seeking damages resulting from the accident. The case was transferred to this Court where the parallel and related case, 3:21-cv-554-CCB-SJF *Che et al. v. Daimler Trucks North America, LLC et al.* was pending. Through the instant motion, DTNA argues that judgment on the pleadings is appropriate because as a component manufacturer, it owed Plaintiffs no duty under the Indiana Product Liability Act ("IPLA"). This Court denied an essentially identical motion in *Che*. [*Che*, DE 146, 154]. The *Che* analysis resolves the questions posed here in *Yao*. Therefore, the Court repeats the *Che* Opinion and Order, edited to address the minor differences between the motions, for completeness of the record and denies DTNA's instant motion.

I.  **Factual and Procedural Background**

The product at issue is a Freightliner M2 106 chassis and cab ("Chassis"). It appears this Chassis was manufactured in Mexico and sold by DTNA to former Defendant Truck Centers, Inc.

in December 2016. [DE 62 at 15]. As sold by DTNA, the Chassis was an "incomplete vehicle" and looked something like this:



[DE 150 at 11]. The Chassis was then delivered by Truck Centers, Inc. to Defendant SVO Group, Inc. ("SVO"). SVO's job was to mount a bus body onto the frame rails of the Chassis, turning it into a "complete" passenger vehicle. That completed vehicle looked something like this:



[*Id.* at 12].

Relevant here, Plaintiff alleges that, by the time the Chassis was manufactured, certain safety features had become widely recognized as important for the safe operation of these vehicles. These features include roll stability control ("RSC"), electronic stability control ("ESC"), and lane

2

departure systems.  Despite the importance of these systems, Plaintiffs allege that DTNA only offered the systems as "for-profit options," and did not equip the Chassis with these systems "notwithstanding that it had actual knowledge that [the Chassis] was being purchased by [SVO]—a company specializing in the Second Stage manufacturing of cutaway buses." [*Id.* at 17–18].  As evidence that the systems were not equipped on the Chassis, the complaint includes the following excerpt from the Chassis' invoice:

```
456   736-998   NO OBSTACLE DETECTION SYSTEM
457   73H-998   NO CAMERA/VIDEO/IMAGING SYSTEM
458   49B-998   NO VEHICLE STABILITY ADVISOR OR CONTROL
459   73B-998   NO LANE DEPARTURE WARNING SYSTEM
```

[*Id.* at 17].

Plaintiffs don't just fault DTNA for the lack of safety features, but also SVO and other Defendants involved downstream.  Plaintiffs allege that these Defendants are liable "for failing to order these critical safety systems on a vehicle being designed specifically for transporting large passenger groups." [*Id.*].

Plaintiffs allege that the absence of these safety features had tragic results in September 2019.  That is when the finished vehicle, carrying a tour group of Chinese nationals, was involved in a roll-over accident in Utah.  Thirteen passengers were partially or fully ejected from the vehicle, four were killed, fifteen seriously injured, and twelve other passengers, including the driver, suffered minor injuries.

As noted above, this case was originally filed in the Central District of California.  The *Che* plaintiffs originally filed their case in the Southern District of Illiniois.  Upon request of the defendants, the *Che* court transferred the case to this Court finding:

> Indeed, the actual acts manifesting the sale of the cab/chassis occurred in Indiana: SVO Group approached [David] Klockow [the vehicle salesman] in Indiana; it ordered the cab/chassis from him in Indiana; DTNA delivered it to Indiana; and Klockow delivered it to SVO Group in Indiana.  Thereafter, the bus was completed in Indiana.  It is true the paperwork for the transaction might have run through

>    Truck Centers' headquarters in Illinois, but it was delivered and paid for, and title was given in Indiana. In truth, the substantial events of the cab/chassis transaction occurred in the four-mile stretch in Elkhart, Indiana, between the Truck Centers and SVO Group facilities.

[*Che*, DE 64 at 8].

## II.     Legal Discussion

### A.     *Judgment on the Pleadings Standard*

A party is permitted under Federal Rule of Civil Procedure 12(c) to move for judgment on the pleadings after the parties have the complaint and the answer. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings "under Rule 12(c) is reviewed under the same standard as a motion to dismiss under 12(b): the motion is not granted unless it appears beyond doubt that the plaintiff can prove no facts sufficient to support his claim for relief, and the facts in the complaint are viewed in the light most favorable to the non-moving party." *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997). The court, in ruling on a motion for judgment on the pleadings, must "accept as true all well-pleaded allegations." *Forseth v. Village of Sussex*, 199 F.3d 363, 364 (7th Cir. 2000). A court may rule on a judgment on the pleadings under Rule 12(c) based on a review of the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits. *Id.* at 452–53.

### B.     *Indiana, not Oregon, Law Applies*

The first dispute presented is which state's law applies. Plaintiffs, pointing to Daimler Defendants' corporate home, argue that Oregon law should apply. Daimler Defendants assert that Indiana bears a closer relationship to the action and therefore Indiana law should apply. After weighing the relevant factors, the Court agrees with Daimler Defendants.

First, the court must determine whether the differences between the laws of the states are "important enough to affect the outcome of the litigation." *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d

4

1071, 1073 (Ind.[1] 1987). Those differences exist here. As Plaintiffs note, Oregon and Indiana have significant differences in the application of their product liability statutes and damages available for wrongful death. Daimler Defendants do not dispute these differences but note that Oregon is silent on the exact issue presented here: the duty of component parts manufacturers to install safety features. This, they argue, means that there is no difference in *relevant* law, so no choice tour law analysis is necessary.

Daimler Defendants' analysis is too narrow. Indiana does not use *dépeçage*, splitting issues within causes of action for choice of law analysis. *Simon v. United States*, 805 N.E.2d 798, 801 (Ind. 2004). The Court, then, cannot simply focus on Daimler Defendants' affirmative defense. Instead, it must consider the IPLA claim *in toto*, and, under Indiana law, the differences identified by Plaintiffs are enough. *Id.* at 805 (differences in wrongful death damages were "significant differences between the substantive laws of the two states").

So the Court must engage in a choice of law analysis. The presumption is that the traditional *lex loci delicti* rule (the place of the wrong) will apply. *Hubbard*, 515 N.E.2d at 1073. Under this rule, the court applies the substantive laws of the "the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Id.* This presumption is not conclusive, however. It may be overcome if the court is persuaded that "the place of the tort 'bears little connection' to this legal action." *Id.* at 1074.

The parties agree that Utah was where the last event necessary for the cause of action occurred. They also agree that Utah bears little connection to the action. The Court agrees. The complaint alleges that the tour bus was simply passing through Utah as part of a larger tour of the

---

[1] A federal court sitting in diversity, as this Court is, applies the forum state's choice-of-law rules. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 109 (2022).

5

southwestern United States. [DE 150 at 7–8]. Only one party does business in Utah, and no relevant act, other than the accident, occurred there. The Court is satisfied that the presumption of *lex loci delicti* has been overcome.

Because the location of the tort is insignificant to the action, the Court must consider other contacts that may be more relevant, "such as: 1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered." *Hubbard*, 515 N.E.2d at 1073–74 (citing Restatement (Second) of Conflict of Laws § 145(2) (1971)). These factors are not an exclusive list nor are they necessarily relevant in every case. All contacts "should be evaluated according to their relative importance to the particular issues being litigated." *Id.* at 1074. This evaluation ought to focus on the essential elements of the whole cause of action, rather than on the issues one party or the other forecasts will be the most hotly contested given the anticipated proofs. *Simon*, 805 N.E.2d at 805.

On this point, it is Plaintiffs' analysis that is too narrow. Describing their claim against the Daimler Defendants as one of defective design, Plaintiffs argue that Daimler Defendants' Oregon-based corporate headquarters has "the most significant relationship to this design defect action." [DE 162 at 9]. There are several problems with this argument.

First, Plaintiffs' claims against Daimler Defendants are not limited to defective design. They also allege that all Defendants "supplied, distributed, wholesaled, and sold the subject vehicle while failing to warn consumers there was an unreasonable risk." [DE 150 at 27]. All these actions occurred in Indiana, as set out by the Southern District of Illinois in the *Che* transfer order. Even the claims against Daimler Defendants, then, have split nexuses between Oregon and Indiana. But more importantly, the Court cannot look only to the claims against Daimler Defendants. Again, Indiana does not use *dépeçage*, so the Court must look to the IPLA action as a whole. All remaining Defendants involved in the manufacture of the tour bus are Indiana citizens doing business in

6

Indiana. All acts related to the sale of the Chassis took place in Indiana. And there is no argument from Plaintiffs that any law other than Indiana law would apply to any Defendant other than Daimler Defendants. With any connection to Oregon for Daimler Defendants being tenuous at best, the Court concludes that the absolute link between Indiana and the remaining manufacturing Defendants carries the day. Indiana law will be applied.

### C. *Plaintiffs' Complaint does not Plead Offer and Rejection of the Safety Features*

Now to the substantive law. Daimler Defendants' motion argues that, under the Indiana Supreme Court's decision in *Brewer v. PACCAR, Inc.*, 124 N.E.3d 616 (Ind. 2019), they had no duty to Plaintiffs to install the specified safety feature because Daimler Defendants offered those features and SVO declined them. Plaintiffs disagree, arguing that their complaint does not foreclose a claim and that the component manufacturer defense should be taken up on summary judgment.

The IPLA establishes when a product is defective, including in design. Indiana Code section 34-20-4-1 provides,

> A product is in a defective condition . . . if, at the time it is conveyed by the seller to another party, it is in a condition:
>
> (1) not contemplated by reasonable persons among those considered expected users or consumers of the product; and
>
> (2) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption.

The IPLA does not differentiate between a final manufacturer and a component-part manufacturer. *See TRW Vehicle Safety Sys. v. Moore*, 936 N.E.2d 201, 215 (Ind. 2010). Both are "manufacturers" for purposes of the IPLA, *see* I.C. § 34-6-2-77, and so both have a duty "to design . . . products which are reasonably fit and safe for the purpose for which they are intended," *Guerrero v. Allison Engine Co.*, 725 N.E.2d 479, 482 (Ind. Ct. App. 2000).

7

In *Brewer*, the Indiana Supreme Court carved out limited exceptions for component part manufacturers when a defective design case alleges a failure to install safety features. The Supreme Court held that "under the IPLA, a component-part manufacturer has no duty to include optional safety features that were offered to, and rejected by, the final manufacturer." *Brewer*, 124 N.E.3d at 625.[2] This exception can be proven via "a purchase order or invoice identifying specific safety features that were offered and rejected." *Id.*

Daimler Defendants argue that Plaintiffs' complaint alleges all elements of the exception. They note that the complaint alleges that the Chassis was an "incomplete vehicle," showing that Daimler Defendants were component manufacturers. They also point to the repeated allegation that the safety features were "for-profit options" as proof that the features were offered. Finally, they point to the excerpted invoice, showing that the Chassis was not equipped with any of the safety features, as proof of rejection. Plaintiffs call these allegations "cherry-picked," and instead claim that their complaint "merely states that the safety features described therein were not sold with the chassis, but it does not explain how or why." [DE 162 at 15–16].

The Court sees this as an extremely close call. But at this early stage in the litigation, it sides with Plaintiffs. Consider the evidence that was found to defeat summary judgment in *Brewer*. There, the end-manufacturer answered requests for admissions denying "that it was provided with a list of options from which to identify or select the options that it desired." *Brewer*, 124 N.E.3d at 625. That the Indiana Supreme Court found this denial enough to defeat the component manufacturer defense tells the Court that "offer" and "reject" are active verbs. That is, it requires more than optional safety features that are not ordered. Instead, to prove the defense, the component

---

[2] *Brewer* also created an exception to liability where "the integrated product can be used safely without the allegedly necessary safety features." *Id.* at 624. That exception is not at issue here.

8

manufacturer must show that it made an active offer to install the safety features and the end manufacturer actively declined.

Examples might help. Say, for instance, SVO called Klockow and said it wanted a base model Freightliner M2 106 chassis and cab. No other discussions are held regarding options, safety or otherwise. Under these facts, *Brewer* may not apply. But, on the other hand, say that SVO went down a checklist of available options, selecting and rejecting each as it saw fit. Or, similarly, that Klockow verbally reviewed all available options with SVO. These facts may support the application of the *Brewer* exception.

Plaintiffs' complaint alleges neither scenario. Instead, it simply alleges that optional features were not sold with the Chassis. The Court does not believe that is enough for Plaintiffs to have pleaded themselves out of court. *See Ruebe v. PartnerRe Ireland Ins. DAC*, 470 F. Supp. 3d 829, 843 (N.D. Ill. 2020).

### III. Conclusion

For these reasons, DTNA's motion for judgment on the pleadings is **DENIED**. [DE 158]. SO ORDERED.

September 4, 2024

                                         */s/ Cristal C. Brisco*
                                         CRISTAL C. BRISCO, JUDGE
                                         UNITED STATES DISTRICT COURT