UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ZHIGUANG YAO, et al.,

    Plaintiffs,

    v.

DAIMLER TRUCKS NORTH AMERICA
LLC, et al.,

    Defendants.

Case No. 3:21-CV-784-CCB-SJF

## OPINION AND ORDER

Before the Court is Daimler Trucks North America LLC's ("DTNA") Motion for Summary Judgment. (ECF 188). Plaintiffs Zhiguang Yao, et al., oppose this motion. (ECF 205). The Court grants DTNA's motion for the following reasons.

### I.    RELEVANT BACKGROUND

This is a products liability case that emerged from a tour bus accident. Plaintiffs assert four counts against all Defendants: (1) strict product liability, (2) negligence, (3) breach of implied warranty, and (4) wrongful death. (ECF 189-2 ¶¶ 81–116). The core of Plaintiffs' liability theory is that DTNA and other Defendants introduced a vehicle into the stream of commerce that was defective because DTNA failed to include an Electronic Stability Control ("ESC") feature on the chassis of the tour bus that crashed. (ECF 206 ¶ 13). The Court summarizes the undisputed facts below and notes several relevant factual disputes.

On September 20, 2019, a tour bus ("the Bus") crashed in Utah, leading to the alleged injuries of Plaintiffs. (ECF 189-2 ¶¶ 18, 21–22). The Bus was manufactured by three companies in three different stages: (1) DTNA built a truck chassis ("the Subject Chassis") for the Bus in December 2016, (2) MOR/Ryde International configured the Subject Chassis for use as a tour bus in February 2017, and (3) SVO Group, Inc. ("SVO") finished the Bus by configuring it with an Embassy bus body in February 2017. (*Id.* ¶¶ 36–39). It is the Subject Chassis that is at issue here.

The Subject Chassis was, by itself, an incomplete vehicle. (*Id.* ¶¶ 37–39). It could become part of many different types of final vehicle, including fire trucks, delivery trucks, concrete trucks, box trucks, dump trucks, food or beverage trucks, or moving trucks. (ECF 189-5 ¶ 4). The Subject Chassis was sold to Truck Centers, Inc. ("Truck Centers") for delivery to SVO. (ECF 189-2 ¶¶ 43; ECF 189-6; ECF 189-8). After DTNA sold the Subject Chassis and MOR/Ryde International configured it, SVO turned the Subject Chassis into the complete tour bus by customizing and mounting a bus body on the frame rails of the Subject Chassis and then integrating the bus body with the cab section. (ECF 189-2 ¶ 39; ECF 189-7 at 104:16–19).

After SVO completed the Bus, it sold the Bus to a company called TJ Destination, which then sold the bus to CoachWest Luxury & Professional Motorcars ("CoachWest"). (ECF 189-8; ECF 189-10). A "Dealer/Manufacturer Sales Agreement" was formed between SVO and CoachWest, designating SVO as the "manufacturer" and stipulating that any vehicles to be manufactured outside SVO's "standard specifications" would require approval in writing by SVO. (ECF 189-7 at 108:15–18; ECF

189-11 ¶ 4). In other words, SVO would decide what features were installed on its vehicles' chassis. (ECF 189-7 at 105:13–106:9, 113:4–17). If CoachWest wanted ESC included on the chassis of a vehicle it purchased, it would need to make that request in writing. (*Id.* at 113:24–114:22, 166:1–24).

The parties contest the degree to which DTNA made dealerships aware of the safety features available on its chassis, but it is undisputed that DTNA provided a brief description of ESC as an option on its ordering platform, and that SVO ordered multiple chassis from DTNA, some with ESC included and some without. (ECF 189-5 ¶¶ 7, 10). That description was included on SpecPro, an electronic version of a data book provided to DTNA's customers. (ECF 211-1 at 30:8–12). The description reads, "Electronic stability combines the rollover prevention of roll stability control with directional stability in order to keep the vehicle traveling on its intended path by providing spin out and drift control." (*Id.* at 101:3–16).

David Klockow, the Sales Executive at Truck Centers, sold the Subject Chassis to SVO. (ECF 189-14 ¶4). Mr. Klockow had a longstanding relationship with the late Alex Foris, the owner of SVO and its predecessor companies. (*Id.* ¶ 5). During that relationship, Mr. Foris's companies, including SVO, purchased hundreds of truck chassis from Truck Centers. (*Id.* ¶ 6). DTNA began offering ESC on the M2 chassis, the same model chassis as the Subject Chassis, prior to the sale of the Subject Chassis. (*Id.* ¶ 9). And Mr. Foris elected to equip three of the M2 chassis he ordered from Truck Centers and DTNA with ESC between 2016 and 2019. (*Id.* ¶ 12). But the parties dispute whether Mr. Klockow specifically offered to include, and Mr. Foris specifically rejected,

ESC on the Subject Chassis. Mr. Klockow does, however, recall DTNA providing the SpecPro description of ESC. (ECF 211-1 at 101:24–25). It is undisputed that SVO did not order ESC, and that the Subject Chassis as built did not include ESC. (ECF 189-2 ¶¶ 53–54).

## II.   LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the Court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). But the Court will not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor will the Court conduct research or develop arguments for the parties. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

To survive summary judgment, the nonmovant "cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to

show the existence of each element of its case on which it will bear the burden at trial."
*Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations
omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir.
2016). Summary judgment "is the put up or shut up moment in a lawsuit, when a party
must show what evidence it has that would convince a trier of fact to accept its version
of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)
(quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th
Cir. 2010).

### III.   ANALYSIS

Plaintiffs allege DTNA failed to include ESC on the Subject Chassis and is
therefore liable for damages caused by the lack of ESC.[1] DTNA moves for summary
judgment on the grounds that it owed no duty to Plaintiffs to install the safety feature.
In support, it argues that it was only a component manufacturer, and that SVO, the final
manufacturer of the Bus, was offered ESC and rejected it.

### a.  Choice of Law

At the pleadings stage of this litigation, the Court addressed the question of
which state's law to apply. Plaintiffs, in response to DTNA's motion for judgment on
the pleadings, urged the Court to apply the law of Oregon, DTNA's corporate home.
DTNA argued that, as Indiana bore a closer relationship to the action, Indiana law

---

[1] Plaintiffs have previously argued that DTNA's failure to include other safety features beyond ESC gave
rise to liability, but at this point in the litigation they only argue liability based on failure to include ESC.
(ECF 206 ¶ 13) ("Plaintiffs now only allege that DTNA and other Defendants introduced into the stream
of commerce a defective vehicle because it lacked an Electronic Stability Control feature.").

should apply. The Court sided with DTNA, finding that as all acts related to the sale of the Subject Chassis took place in Indiana, Indiana law should apply. (ECF 173 at 5–7).

Now Plaintiffs ask the Court to reverse that determination, cross-referencing their opposition to CoachWest's motion for summary judgment for the argument that as this case began in California, California law should apply. (ECF 202 at 3–7). In support, they cite *Van Dusen v. Barrack* for the proposition that transfer under 28 U.S.C. § 1404(a) does not affect choice of law analysis unless the transferring court could not properly exercise jurisdiction over the defendant. 376 U.S. 612, 616 (1964). But § 1404(a) permits transfer based on the convenience of parties and witnesses. 28 U.S.C. § 1404(a). Here, the parties stipulated to transfer because California could not exercise personal jurisdiction over DTNA. (ECF 15). Thus, *Van Dusen* does not apply. *See Gonzalez v. Volvo of Am. Corp.*, 734 F.2d 1221, 1224 (7th Cir. 1984), *superseded on other grounds*, 752 F.2d. 295 (7th Cir. 1985) ("[P]laintiffs are not permitted to capture favorable law of forums which lack personal jurisdiction over the defendant by filing suit there and then transferring the action to a state that is able to exercise personal jurisdiction."). The remainder of Plaintiffs' cross-referenced argument offers nothing new, instead retreading the same ground the Court walked in its initial choice-of-law analysis. Accordingly, Indiana law remains the governing law of this case.

### b. Indiana Product Liability Act Claim

The Indiana Product Liability Act ("IPLA") "governs all actions that are (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon

which the action is brought." *Atkinson v. P&G-Clairol, Inc.*, 813 F. Supp. 2d, 1021, 1023–24 (N.D. Ind. 2011) (quotations omitted). In design defect cases such as this, a negligence standard applies. *See Brewer v. PACCAR, Inc.*, 124 N.E.3d 616, 621 (Ind. 2019). To prevail on a claim under the IPLA, Plaintiffs must show that (1) DTNA owed a duty to Plaintiffs, (2) DTNA breached that duty, and (3) DTNA's breach proximately caused injury to Plaintiffs. *Id.*

There is one exception to the IPLA that is relevant here: the component-part manufacturer defense. In *Brewer v. PACCAR, Inc.*, the Indiana Supreme Court made clear that a component-part manufacturer "has no duty to include optional safety features that were offered to, and rejected by, the final manufacturer." *Id.* at 625. This is because it is the final manufacturer who "is in the best position to decide which features are necessary—and which are not—for the environment in which the integrated product will be used." *Id.* To successfully assert the component-part manufacturer defense at summary judgment, a defendant must show there is no dispute of material fact (1) that it is in fact a component-part manufacturer, (2) the optional safety feature was offered to the final manufacturer, and (3) that the final manufacturer rejected the feature. *Id.* If the final manufacturer denies that it was offered a safety feature, it falls to the component-part manufacturer to produce evidence indicating the offer and rejection of the safety feature. *See id.* One example of such evidence is a "purchase order or invoice identifying specific safety features that were offered and rejected." *Id.*

Here, Plaintiffs allege that DTNA is liable because it failed to include the optional safety feature ESC. DTNA asserts the component-part manufacturer defense, arguing

that it is a component-part manufacturer and that ESC was offered on the Subject Chassis, but the final manufacturer of the Bus rejected it.

### i. Component-Part Manufacturer

In its motion for summary judgment, DTNA asserts that it is a component-part manufacturer. In support, it draws an analogy to *Brewer.* In *Brewer*, the Indiana Supreme Court found that a glider kit that could be combined with an engine, transmission, and exhaust system to create a complete semi-truck was a component part, and thus the company that built it was a component-part manufacturer. *Id.* at 619. Here, the Subject Chassis built by DTNA was an incomplete vehicle capable of combination with other parts to create a variety of vehicles. Thus, DTNA argues, it is a component-part manufacturer within the meaning of *Brewer.* Plaintiffs have offered no contradicting argument. The Court agrees with DTNA. DTNA has satisfied this first element of the component-part manufacturer defense as a matter of law.

### ii. Offer of ESC

Next, DTNA asserts that ESC was offered to the final manufacturer. In support, it argues that the undisputed facts show SVO was the final manufacturer of the Bus and that Truck Centers, the seller of the Subject Chassis, offered ESC to SVO when SVO ordered the Subject Chassis from DTNA through Truck Centers. Plaintiffs accept that SVO was the final manufacturer but dispute that SVO was offered ESC when it ordered the Subject Chassis. They argue that DTNA is stacking inferences to reach the conclusion that SVO must have been aware that ESC was available as an option.

DTNA first points the Court to the testimony of Mr. Klockow, the Sales Executive for Truck Centers. In response to Plaintiffs' argument that Mr. Klockow only testifies about general practice, DTNA emphasizes several relevant parts of his testimony. First, Mr. Klockow testified that he discussed the availability of ESC with Mr. Foris, SVO's owner, when ESC became available in 2010. (ECF 211-1 at 110:7–17; 112:5–9). Second, Mr. Klockow testified that Mr. Foris explicitly rejected ESC on medium-duty chassis like the Subject Chassis. (*Id.* at 132:19–133:24). Third, Mr. Klockow testified that he sold hundreds of vehicles to Mr. Foris, who repeatedly ordered the same types of vehicles. (*Id.* at 53:10–55:25). DTNA argues that this conclusively establishes that SVO, through Mr. Foris, was aware of ESC as an option on the Subject Chassis.

DTNA then highlights the Dealer Handshake document created by Mr. Klockow. Mr. Klockow testified that he created the document after discussing the Subject Chassis with Mr. Foris. (*Id.* at 123:13–23, 127:5–10). And in his declaration, Mr. Klockow stated that he used the Dealer Handshake to confirm that the chassis ordered conformed to the specifications the customer requested. (ECF 189–14 ¶ 15). The Dealer Handshake contains a tick mark next to the phrase, "NO VEHICLE STABILITY ADVISOR OR CONTROL." (ECF 189-17 at 13). Mr. Klockow testified and stated in his declaration that he created the tick mark to indicate that Mr. Foris declined ESC for the Subject Chassis. (ECF 189-14 ¶ 15; ECF 211-1 at 127:5–10). DTNA argues that because Mr. Foris was aware of the ESC option, Mr. Klockow testified that Mr. Foris declined ESC on the Subject Chassis, and the Dealer Handshake created by Mr. Klockow after discussion

9

with Mr. Foris showed that ESC was not included on the Subject Chassis, it has been established that ESC was offered to Mr. Foris.

Plaintiffs do not offer any evidence to contradict this. Instead, they contend that DTNA's evidence is insufficient to show that ESC was offered. In support, they argue that DTNA does not offer any purchase order or invoice showing ESC was offered, instead providing only testimony about general industry practice and testimony about what Mr. Foris "would have known." (ECF 205 at 10). Citing *Jarrell v. Monsanto* for the proposition that the general availability of a feature does not constitute an offer of that feature to a specific customer, they argue that DTNA has failed to produce evidence sufficient to show there is no material dispute of fact over whether DTNA offered ESC on the Subject Chassis to SVO. 528 N.E.2d 1158 (Ind. Ct. App. 1988).

To begin, it is important to note the factual distinctions between this case and *Brewer*. In *Brewer*, as here, the defendant component-part manufacturer alleged that the final manufacturer was offered an optional safety feature, and the final manufacturer rejected that feature. *See* 124 N.E.3d at 625. But the final manufacturer in *Brewer* provided a discovery response in which it denied that it was ever offered the feature. *Id.* When the component-part manufacturer provided no contradicting evidence, "such as a purchase order or invoice identifying specific safety features that were offered and rejected," the *Brewer* Court held that the component-part manufacturer failed to show entitlement to summary judgment. *Id.*

Here, there are two critical differences. First, Plaintiffs do not argue that SVO denies it was offered the option of ESC. In fact, Plaintiffs agree that SVO ordered chassis

with and without ESC. And second, DTNA has provided positive evidence, including Mr. Klockow's deposition testimony and the Dealer Handshake document, that SVO was in fact offered the ESC option. The position of the parties in *Brewer* is reversed here: it is the defendant who has provided evidence supporting the existence of an offer, and the plaintiff who has failed to provide contradicting evidence. The fact that DTNA's evidence does not fit precisely within the example of "a purchase order or invoice" is immaterial; the *Brewer* Court was emphasizing the importance of evidence with that example, and DTNA has provided evidence. *See id.* ("[Defendant] *did not provide anything* to refute [the contradicting discovery response], such as a purchase order or invoice . . . ." (emphasis added)). DTNA's evidence is all the more compelling in the context of a high-volume sales relationship like that between DTNA and SVO, where the granularities of each individual chassis negotiation and purchase are less likely to have been recorded. In the absence of any contradicting evidence, the Court finds that DTNA has established as a matter of law that ESC was offered to the final manufacturer.

### iii.  Rejection of ESC

Finally, DTNA asserts that SVO rejected the offer of ESC. In support, it argues that Mr. Klockow's uncontroverted testimony and affidavit show that Mr. Klockow and Mr. Foris discussed the availability of ESC, and while SVO did order some chassis that included ESC, SVO did not order the Subject Chassis with ESC included. Plaintiffs respond that DTNA asks the Court to accept that "because SVO had been purchasing truck chassis from DTNA (even if indirectly) for decades, it surely knew of the

availability of features like ESC and could include them if desired." (ECF 205 at 17). This, Plaintiffs contend, is insufficient to constitute rejection within the meaning of *Brewer.*

Both parties agree that SVO ordered chassis with and without ESC between 2016 and 2019. And both parties agree that SVO did not order ESC on the Subject Chassis. DTNA argues that SVO's rejection of ESC on the Subject Chassis was knowing, while Plaintiffs contend that the evidence does not show SVO made a conscious decision to reject ESC. To support knowing rejection, DTNA points to the testimony of Mr. Klockow and the declaration of Christopher M. Rieflin, DTNA's executive engineer. Mr. Klockow testified in his deposition that Mr. Foris told him ESC was unnecessary for medium-duty chassis like the Subject Chassis. (ECF 211-1 at 132:11–133:19). And Mr. Rieflin asserted that based on his review of SVO's purchase history, between 2016 and 2019, SVO ordered 48 truck chassis from DTNA, and only ordered three of those chassis with ESC. (ECF 189-5 ¶ 10). DTNA argues that this, combined with the undisputed fact that SVO ultimately decided what features would be included on the chassis it ordered, shows rejection.

DTNA has shown that SVO, the final manufacturer, knew that ESC was available. It has shown that SVO occasionally ordered chassis with ESC, but usually declined ESC during the period in which the Subject Chassis was ordered. And it has shown that SVO ultimately decided what features would be included on its chassis, and that the Subject Chassis was not ordered with ESC. Plaintiffs themselves included with their complaint an invoice to SVO that stated the Subject Chassis was purchased with

"NO VEHICLE STABILITY ADVISOR OR CONTROL." (ECF 189-2 ¶ 53). Nothing more is needed to show rejection. The Court finds that DTNA has established as a matter of law that SVO, the final manufacturer, rejected the inclusion of ESC on the Subject Chassis.

At the pleadings stage, the Court found DTNA's assertion of the component-part manufacturer defense to be "an extremely close call." (ECF 173 at 9). It is no longer. Based on undisputed facts and uncontroverted evidence, DTNA has shown that it was a component-part manufacturer, that it offered ESC to SVO, and that SVO rejected that offer. Thus, DTNA had no duty to include ESC and is entitled to judgment as a matter of law.

### iv.   Plaintiffs' Additional Arguments

Plaintiffs make two more arguments that bear mentioning. First, they argue with minimal development that DTNA breached its duty to warn downstream consumers of the risks of buying a chassis without ESC. This argument fails. *Brewer* is clear: where a component-part manufacturer shows that a safety feature was offered to the final manufacturer, and the final manufacturer rejected that offer, the component-part manufacturer has no duty to include the safety feature. *See* 124 N.E.3d at 625. It is the final manufacturer who "is in the best position to decide which features are necessary — and which are not — for the environment in which the integrated product will be used." *Id.* Plaintiffs' perfunctory allegation that DTNA breached its duty to warn cannot overcome this.

Second, Plaintiffs seem to argue that because DTNA had no contact with downstream purchasers beyond Truck Centers, DTNA is not shielded by Truck Centers' offer and SVO's rejection of ESC. But again, *Brewer* is clear: if the optional safety feature is offered to the final manufacturer, and the final manufacturer declines, the component-part manufacturer has no duty to include the safety feature. *Id.* It does not matter that it was not DTNA that offered the feature to SVO; it only matters that the feature was offered and rejected. This argument also fails.

IV.   **CONCLUSION**

For these reasons, DTNA's Motion for Summary Judgment, (ECF 188), is **GRANTED.**

SO ORDERED on March 10, 2026.

_/s/ Cristal C. Brisco_____
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT